Argued March 16; reversed April 19; rehearing denied
May 24, 1932.

# HOFFMAN v. BROADWAY HAZELWOOD

(10 P. (2d) 349, 11 P. (2d) 814)

520

*Arthur I. Moulton,* of Portland (Lord & Moulton, of Portland, on the brief), for respondent.

*Frank S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for appellant.

BELT, J. This is a personal injury action. The defendant corporation owns and operates a large restaurant and confectionery business on Broadway in the city of Portland. Plaintiff, at time of injury, was an employee in the bakery department. It was her business to bake biscuits, graham gems, and potatoes. Food prepared in a room where she alone worked was taken to the kitchen and placed in the ovens. In going from the room where the food was prepared to the kitchen, it was necessary every few minutes for her to go along an aisle or way about five feet wide, near the place where others worked in washing dishes, pots, and various kinds of cooking utensils. After the pots and kettles were washed, the greasy water and refuse was thrown into a garbage can located near the way over which plaintiff passed. It is the contention of plaintiff that this garbage can was defective in that greasy water leaked therefrom onto the tile floor of the aisle, causing it to become slippery and dangerous. She asserts that in continually passing over this greasy floor the soles of her shoes became slick and greasy and that she complained of this condition to the chef

who, in effect, promised to get a garbage can that would not leak. She put a potato sack on the floor to absorb the greasy water, but, on complaint of the chef, this was removed. While entering the room where she prepared the food and which she had recently scrubbed, she slipped and fell on the wet tile floor, causing the injury on which this action is based.

Defendant, in substance, is charged with negligence in failing to furnish a garbage can which did not leak, and in permitting grease to flow onto the tile floor causing the way over which plaintiff was obliged to pass to become dangerous.

Defendant denied negligence and introduced testimony tending to show that the tile floor was scrubbed and cleaned three or four times each day and that the garbage can did not leak. The chef enthusiastically testified, "The floor was so clean you could eat off it. It is that way all the time." Defendant alleged, as affirmative defenses, contributory negligence and assumption of risk.

Verdict and judgment were had for plaintiff in the sum of $7,100.

■ Defendant earnestly urges that this is a common law action and that the court should have declared, as a matter of law, that plaintiff fully understood and appreciated the risk and danger of her employment. The plaintiff, in answer to this contention, in substance asserts: (1) That the Employers' Liability Act controls and, therefore, assumption of risk is not a defense and contributory negligence can be considered only in fixing the amount of damages; (2) that the work in which plaintiff was engaged comes within the provisions of the Workmen's Compensation Act and, since the defendant filed notice of its rejection of the act, it could not avail itself of the common law defenses

of assumption of risk and contributory negligence; and (3) if it be assumed that the action is governed by the common law, in view of the implied promise of the defendant to furnish a suitable garbage can and to remove the dangerous condition of which plaintiff complained, assumption of risk would not be a defense.

The trial court submitted to the jury the question as to whether the plaintiff at the time of her injury was engaged in a work involving a risk or danger and instructed that, if they did so find, the Employers' Liability Act would apply, but that, if this question were answered in the negative, plaintiff would not be entitled to recover. The offer by plaintiff to prove that the defendant had given notice of its refusal to comply with the Workmen's Compensation Act was rejected.

In our opinion this is a common law action and the Employers' Liability Act has no application. It is clear that the work in which plaintiff was engaged does not come within the provisions of section 1 of the act. If the act applies, it is by reason of the last clause thereof wherein it is provided:

"* * * and generally, all owners, contractors, or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

In *Isaacson v. Beaver Logging Co.*, 73 Or. 28 (143 P. 938); *Schulte v. Pacific Paper Co.*, 67 Or. 334 (135 P. 527, 136 P. 5), and *Schaedler v. Columbia Contract*

*Co.,* 67 Or. 412 (135 P. 536), it was held that the act covered only those cases of employers' liability enumerated therein; and that the "and generally" clause amounted only to a reiteration of the preceding provisions of the section. However, this court in later cases has given a much more liberal interpretation of the act and has held consistently that the cases of employers' liability are not limited to those specified in section 1: *Bottig v. Polsky,* 101 Or. 530 (201 P. 188), and cases therein cited. In *O'Neill v. Odd Fellows Home,* 89 Or. 382 (174 P. 148), Mr. Justice BEAN, speaking for the court, said:

"The whole language of the act denotes that the kind of employment thereby protected is that which is beset with danger, the hazardous, dangerous employments similar to those enumerated in the act, or which under the circumstances or manner in which it is being executed is rendered dangerous, within the meaning of the act."

Mr. Justice HARRIS in *Bottig v. Polsky,* supra, said:

"* * * it will be impossible to expand the meaning of the statute beyond the boundaries marked out in O'Neill v. Odd Fellows' Home, 89 Or. 382 (174 Pac. 148). It is now too late to enter into any debate as to whether or not the act applies to an employment which, although ordinarily nonhazardous is in a given instance made dangerous by unusual and peculiar conditions; for that question is foreclosed by numerous precedents and the rule of stare decisis applies with full force."

In the recent case of *Freeman v. Wentworth & Irwin* 139 Or. 1 (7 P. (2d) 796), Mr. Justice ROSSMAN said:

"The only employments protected by this clause are those which are of the general kind mentioned specifically in preceding parts of the act, that is, those which men commonly regard as dangerous and hazardous. Bottig v. Polsky, 101 Or. 530 (201 P. 188)."

Applying the rule announced in these later cases, we conclude that the work in which plaintiff was engaged did not involve a risk or danger within the meaning of the act and, therefore, it was error to submit that question to the jury. If the facts in the instant case come within the provisions of the Employers' Liability Act, it is difficult to conceive of any case wherein the relation of master and servant exists which would be barred. In the light of the title to the act and the context thereof, the court would have been warranted in declaring as a matter of law that the act had no application to the facts in this case. If it were a matter upon which reasonable minds might differ, it would be a question of fact for the jury to determine.

■■ Under the common law, it would be the duty of the defendant company to furnish the plaintiff a reasonably safe place in which to work, but under the Employers' Liability Act it is commanded to "use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance or devices." It will thus be seen that the act imposes upon the employer a much higher degree of care than that which it would be obliged to exercise under the common law. The trial court instructed the jury, in effect, that, if it found the work did involve a risk or danger, the rules of the Employers' Liability Act applied but that, if it did not involve a risk or danger, the plaintiff could not recover. The defendant excepted to all instructions involving the applicability of the Employers' Liability Act, insisting that the case was a common law action and that the court should declare as a matter of law

that the plaintiff, in the light of the undisputed testimony, had assumed the risk of her employment.

As a second line of attack the plaintiff urges that the work in which she was engaged comes within the provisions of the Workmen's Compensation Act and that, by reason of the employer's rejection of the same, it is precluded from relying upon the common law defense of assumption of risk. We agree that, if the work in which plaintiff was engaged was a hazardous employment within the meaning of the Workmen's Compensation Act, the rejection of the same would have the effect of depriving the defendant of such common law defense: *Eckhardt v. Jones' Market,* 105 Or. 204 (209 P. 470). Subdivision (a) of section 49-1815, Oregon Code 1930, specifies as hazardous occupations, "factories, mills and workshops where power-driven machinery is used." A workshop, under the statute, is defined as "any plant, yard, premises, room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise." It is also provided in section 49-1810, Oregon Code 1930, that employers and employees who are engaged in an occupation partly hazardous and partly nonhazardous come within the terms of the act as if such occupation were wholly hazardous. In the instant case the only machine in the room where plaintiff worked was a small electric silver polisher. In the basement there was an electric machine used for the purpose of making sausage but plaintiff in her work was never obliged to come in contact with the same. The other machine mentioned in the testimony is an electric dishwasher. In our opinion, this restaurant and confectionery business owned by defendant was not a "workshop" within the meaning of the act nor was plaintiff engaged in a hazardous employment.

■ Counsel for plaintiff relies strongly upon *Eckhardt v. Jones' Market,* supra, but we think that case can readily be distinguished from the one at bar. In the Eckhardt case the greater part of plaintiff's duties were performed in the operation of the "power driven" sausage machine, although at the time of his injury he was engaged in catching hams which were thrown to him by a fellow employee about ten feet distant. He was engaged in this work of catching hams about four or five hours during the week. In the case at bar, plaintiff did not work with any machinery and was engaged only in the simple and nonhazardous employment of preparing food and carrying the same to the ovens in the kitchen to be baked. If this be considered a hazardous employment within the meaning of the act, we know not where to draw the line. True, the rejection of the act would indicate that the employer, at least, considered that the same was applicable to the work in which it was engaged, but such rejection does not alter the law. It still remains for the court to determine the scope and meaning of the act. The trial court did not err in rejecting the offer of proof that the defendant had filed notice of its intention not to be bound by the Workmen's Compensation Act.

■ Applying the rules of the common law, it does not follow, in the light of the evidence, that the defendant was entitled to a directed verdict. While the evidence discloses that plaintiff understood and appreciated the risks of her employment, there is also some testimony tending to show an implied promise on the part of the defendant to provide a garbage can which did not leak and to remedy the alleged dangerous condition of the passage-way. If, in fact, the plaintiff complained to the defendant of the alleged dangerous

condition of the floor and was induced to continue work by reason of a promise, either express or implied, to remedy such condition, she would be absolved from assuming the risk during a reasonable length of time for the performance of the promise. As stated in *Bevin v. O.-W. R. & N. Co.*, 136 Or. 18 (298 P. 204):

"If no definite time is specified in the promise to make repairs the law implies that it will be done within a reasonable length of time. During that period of time after the making of the promise and until the expiration of a reasonable length of time for its performance the employee does not assume the risk."

We think the evidence in this case does not warrant an instruction upon an express promise but, as stated, there is some testimony tending to show an implied promise. The trial court instructed the jury relative to the applicability of the Employers' Liability Act and no reference was made to the rules of the common law.

■ It is argued that, since the plaintiff did not fall on that part of the floor which was alleged to be in a greasy and dangerous condition, but in a room which she had recently scrubbed, the proximate cause of her injury was speculative and uncertain. According to her testimony, the place where she fell was only two or three feet from where the greasy spot on the floor was located. In the light of this testimony and that pertaining to the slick condition of the soles of her shoes caused by passing over the greasy part of the floor, we think the jury might be warranted in inferring that the proximate cause of the plaintiff's injury was the alleged negligence of the defendant.

■ We are not convinced that the plaintiff wilfully brought to the attention of the jury the fact that the

defendant carried personal liability insurance. On cross-examination, one of defendant's witnesses, in response to the question, "Didn't you talk to anyone before yesterday morning?" answered, "No one but the insurance man." The inquiry concerning a settlement was on dangerous ground and should be avoided on retrial. The law looks with favor upon the efforts of litigants to settle such matters out of court.

▮ For the reason that the trial court instructed the jury relative to the rules of the Employers' Liability Act which imposed upon defendant obligations and a higher degree of care than exacted under the common law, the judgment must be reversed and the cause remanded for a new trial not inconsistent herewith.

BEAN, C. J., BROWN and CAMPBELL, JJ., concur.

---

Petition for rehearing denied May 24, 1932

ON PETITION FOR REHEARING
(11 P. (2d) 814)

BELT, J. It is urged that the judgment in this case should not have been reversed because of instructions given concerning the applicability of the Employers' Liability Act, since no exceptions were taken to such instructions and no assignment of error was based thereon. An examination of the bill of exceptions discloses that the trial court allowed an exception to each of defendant's requested instructions which was not given. It clearly appears from such requested instructions that the same were predicated upon the proposition that the Employers' Liability Act had no application and that the case should be tried under the rules of the common law. Indeed, throughout the trial in the lower court, counsel for defendant insisted that

contributory negligence and assumption of risk were complete defenses. On page 41 of appellant's brief, it is stated: "Assignment of Error III, IV, V and VI submitted to the jury the question of the applicability of the Employers' Liability Act. We have already referred to this matter in the Assignment of Error predicated upon the denial of motion for nonsuit and directed verdict. If the Employers' Liability Act did not apply, then these instructions would be error."

In the light of this record, we see no merit in the contention that this court erred in going outside the record to review the instructions given concerning the applicability of the Employers' Liabliity Act.

The petition for rehearing is denied.

BEAN, C. J., BROWN and CAMPBELL, JJ., concur.